Virginia S. McClelland, Appellant, v. J. J. Snouffer et al., · Appellees.

MORTGAGES:   Requisites—Foreclosure Deed as Mortgage.   One who
1   pays off the amount due under a mortgage trust deed (to which he is a stranger), and receives a quitclaim deed from the trustee, *even though in accordance with a decree of foreclosure of the trust deed,* will be treated as a mortgagee under his quitclaim, when such was the intent and understanding between the said quitclaim holder and the equitable owner of the land.

MORTGAGES:   Absolute Deed as Mortgage—Successive Conveyances.
2   A series of quitclaim conveyances by parties who each hold title as security for the same indebtedness will each, in turn, be treated as mortgages, it appearing that the equitable owner was at all times in possession of the property.

FRAUDULENT CONVEYANCES:   Evidence.   Record reviewed, and
3   held quite insufficient to establish fraud in plaintiff in paying off a mortgage indebtedness and taking over the mortgage security, even though there was some attempt to thereafter enforce the security for a sum greater than had been put into the property.

JUDGMENT:   Lien—Attempt to Displace Lien.   An agreement between
4   an unsecured creditor and his debtor, under which the former takes an assignment of an outstanding real estate mortgage, and thereafter holds the property as security for both the mortgage debt and

the former unsecured debt, cannot be allowed to displace.judgment liens attaching *prior to said agreement.*

*Appeal from Linn District Court.*—F. F. Dawley, Judge.

September 26, 1922.

Rehearing Denied January 16, 1923.

Action in equity. The material facts and nature of the issues tried are sufficiently stated in the opinion.—*Affirmed in part; reversed in part.* .

*H. C. Ring, Redmond & Stewart,* and *Johnson, Donnelly & Swab,* for appellant. .

*Trewin, Simmons & Trewin, Rickel & Dennis,* and *Voris & Haas,* for appellees.

Weaver, J.—This litigation has its origin in conflicting claims affecting the title to about 30 acres of land (spoken of in the record as the quarry property) in or near the city of Cedar Rapids. Any attempt to trace in detail the history of the title to the several smaller tracts comprised in this area would entail much labor, and, in our judgment, is not essential to a proper disposition of this appeal. It is enough, for present purposes, to say that plaintiff founds her claim of title upon a quitclaim deed of the property, made and delivered to her by Lewis Heins, who acquired his title by conveyance from one Beatty, who held it in trust to secure payment of a debt owed by J. J. Snouffer, Junior, to the Farmers & Merchants Bank of Cascade. Though the record is more or less confused and uncertain as to the manner of the acquirement of the property, it is reasonably clear that, for twenty years or more prior to these conveyances, said Snouffer was the beneficial owner of the property; but at no time does he appear to have held the record or legal title. During all this period, he enjoyed the possession and use of the property, except when such enjoyment and use were interrupted by officers and trustees, seeking to enforce

claims of creditors. His tenure was at times the subject of litigation, in which other members of the Snouffer family attempted to contest his rights therein; but he seems to have prevailed, and as between the parties to such controversy, he obtained a decree affirming his ownership. He was a chronic borrower and chronic litigant, and the record is confused by mechanics' liens, sheriff's sales, judgments confessed and judgments recovered, trust deeds, divorce proceedings, and other complications. Struggling against his sea of troubles, he employed the aid of Lewis Heins, a practicing lawyer and experienced business man. Heins assisted his client, both professionally and financially, advancing him various sums of money, and obtaining new loans to care for debts owed to creditors who refused to carry him longer. Among other expedients adopted to stave off the evil day of financial collapse, a loan was obtained from the Cascade Bank, payment of which was secured by trust deed to one Beatty, as trustee. At this time, the apparent legal title was in Snouffer's mother, and she united with him in obtaining the loan. The money thus obtained was used in paying off debts secured by prior trust deeds and other claims. This transaction was had in July, 1907. Default being made in payment to the Cascade Bank, Beatty, the trustee, brought suit to enforce the security, and obtained decree therefor on August 7, 1909, for $7,220.92, with provision in the decree for its payment on or before August 11, 1909, and that, upon the making of such payment, the bank (or its trustee) should make and deliver a quitclaim deed to Snouffer, "or to whomsoever Snouffer shall direct." On August 10, 1909, Heins paid the bank, or its trustee, the amount of its claim, and received the deed to himself, as grantee. About the same time, Heins obtained assignments to himself of several judgments which had been rendered against Snouffer. From that time down to the making of the deed under which plaintiff claims, Snouffer continued in the possession and use of the property, making, in the meantime, various payments to Heins upon his indebtedness. In July, 1917, Heins became seriously ill, and died on the 21st of that month. When it became apparent that the illness was liable to prove fatal, Snouffer, being alarmed at the complications liable to arise, should Heins die holding the title conveyed to

him by the Cascade Bank, appealed to his sister, the plaintiff herein, and to another sister, Mrs. Benjamin, for assistance. Plaintiff and Snouffer together visited Mr. Hann, an attorney at law, and sought his advice and help. They informed Mr. Hann, in substance, that Heins was holding the title to the property under an agreement or trust by which said property should be conveyed to him (Snouffer), whenever Heins received payment of the indebtedness due him from Snouffer for advancements, including also certain judgments of which he had taken assignment. This agreement not being in writing, it was highly important to obtain a conveyance from Heins without delay. Snouffer desired plaintiff to buy the quarry, and take a deed from Heins, as the only means by which the property would be saved; and he proposed that, if she would do so, he would shortly pay every cent he was then owing her and Mrs. Benjamin. To obtain a deed from Heins, it was necessary to pay him off, and this amount Snouffer estimated to be from $10,000 to $12,000. His proposition, according to plaintiff and Mr. Hann, was that plaintiff take the title from Heins, pay Heins's claim and give him (Snouffer) the right or option to take deed from her, upon repayment to her within 30 days of the purchase price to Heins, together with all of his accrued indebtedness to plaintiff and Mrs. Benjamin, which was estimated at about $8,000. He also, according to their version of the understanding, undertook to obtain for them an assignment from Heins of the judgments which the latter had acquired by purchase. The sum of all the claims of indebtedness owed by Snouffer to his two sisters, after adding thereto the amount of the several judgments referred to, as stated by plaintiff and Hann, aggregated $23,874.72. To this was to be added the sum necessary to satisfy Heins's claim, which proved to be much less than they had anticipated. Heins having consented to accept a consideration of $5,000 in full satisfaction, this sum, added to the $23,874.72, made the total nominal consideration of $28,-874.72 for plaintiff's alleged purchase of the property. In closing the transaction, and as an apparent part thereof, Snouffer made and delivered to plaintiff his promissory note for $28,-874.72, due one day after date. It is the contention of the

plaintiff that this note was not made or received as an evidence
of debt, but was, rather, a memorandum or evidence of the
agreed amount which Snouffer should pay, in the event of his
exercising the option given him to purchase the property.
Snouffer did not exercise his option, if any he had, nor did he
pay any part of his debt to his sisters.   In October of the same
year, plaintiff began this action, asking to recover the amount
of the note, together with other moneys alleged to have been
advanced to Snouffer, and prayed a lien for the amount of such
recovery, upon the quarry property.   This petition has been
several times amended, varying somewhat in its allegations,
and expanding its prayer for other and general relief.   Shortly
after this action was begun, but after due service of the orig-
inal notice upon him, J. J. Snouffer died, and his administratrix,
Mary C. Snouffer, has been duly substituted defendant in his
stead.   Later, Joseph Melsha and E. M. Kirkland, being judg-
ment creditors of Snouffer's, intervened severally, asking the
establishment of their judgment liens upon the property.   The
administratrix of Snouffer's estate also, by cross-petition, al-
leges that the property was and is a part of the estate of which
Snouffer died seized, and that it constitutes the only asset avail-
able for payment of the claims of the creditors of the deceased
and expenses of administration; and she asks that said property
be adjudged and held to be subject to sale, to enable her to
administer and discharge her said trust.   Defendant and the
interveners unite in denying that Heins acquired or held any
title to or interest in the property, and allege that the convey-
ance was taken by Heins from the bank, pursuant to a con-
spiracy between him and Snouffer to hinder, delay, and defraud
the creditors of Snouffer, and that the transfer of said alleged
title, under which the plaintiff now claims, was a part of the
same fraudulent scheme, from which plaintiff cannot equitably
be allowed to profit.

The trial court, having heard the evidence, found for the
defendant, that the title to the property obtained by Heins was
taken and held by him as security only, and that the property
constitutes a part of the estate of Snouffer, and was subject to
the payment of claims against said estate, and set aside as fraud-
ulent and void the deed by which Heins undertook to convey

the land to plaintiff. The claims of the interveners were also established as first liens upon the property. The plaintiff's petition was, therefore, dismissed, and her prayer for relief denied.

I.　In support of the claim of the appellant, counsel first argue that the deed from the bank to Heins vested him with the fee of the property, and that, by his conveyance of July 21,

1. MORTGAGES: requisites: foreclosure deed as mortgage.

1917, to the plaintiff, she became and now is the unqualified owner. There is evidence in the record by which, if not otherwise qualified or explained, this proposition could be sustained; for, assuming the validity of the trust deed held by Beatty for the bank, a sale and conveyance made by him to a stranger or third person, under the decree of court, would have wholly eliminated the title and interest of Snouffer, and vested it in the grantee. Had Heins acquired the title in that manner, plaintiff's title as his grantee would probably be impregnable. But while there is evidence that Heins regarded himself as a purchaser of the land, and professed to hold the title in his own right, subject only to an option given Snouffer to buy it on certain terms, the record as a whole is very convincing that he advanced the money for such purchase for or in the interest of Snouffer, and took the title to himself, to be held as security for the repayment of the amount so advanced in his behalf, and for whatever other expenses or advances said Heins was required to make, to preserve the property for Snouffer's benefit. Without further elaboration at this point, we hold that, in so far as the decree below finds the title acquired by Heins to have been held in trust as security for the debt owed by Snouffer, it is to be affirmed.

II.　Coming now to the transaction in which Heins conveyed to plaintiff, we are also of the opinion that the essential character of the title held by the former and by him transferred

2. MORTGAGES: absolute deed as mortgage: successive conveyances.

to the latter remained unchanged; that plaintiff received and holds the title so conveyed as security for the payment of whatever it cost her to satisfy the claims of Heins and the payment of Snouffer's indebtedness to herself and Mrs. Benjamin; and that, subject to her lien thus acquired, the beneficial ownership of the land remained in Snouffer until his death. To this extent also, the decree of the trial court may be affirmed. It may

be that the parties to this deal understood and believed that the legal effect of their adjustment was to vest the entire title in plaintiff; but this we do not think was final or conclusive. The essential character of the title originally taken by Heins being that of mere security or mortgage, it remained a mortgage, despite the somewhat elaborate attempt to convert it into the absolute conveyance. This rule has been frequently applied to cases where a conveyance absolute in form is accompanied by an undertaking to reconvey, upon payment of a specified indebtedness. *Jones v. Gillett*, 142 Iowa 506, 513; *Russell v. Southard*, 53 U. S. 138; *Fort v. Colby*, 165 Iowa 95, 102.

III. The beneficial ownership of the land being in Snouffer, and the apparent or legal title being held originally by Heins, and subsequently by plaintiff, as security for the valid indebtedness of Snouffer, is there any sufficient reason shown for denying plaintiff all equitable relief, or for setting aside the conveyance to her as void or fraudulent? It is upon this question that we are led to differ with the court below. In the first place, the trial court found, correctly, we think, that Heins took the title as security for moneys advanced to Snouffer. There is no finding, and we think no sufficient evidence, that such indebtedness was not of a valid and enforcible character. Were Heins living, still holding such title, and in court, with the present record, it would have to be said that he was entitled to priority of lien, and to have same enforced accordingly. The debt to him was never paid, except as it was paid by plaintiff and Mrs. Benjamin, in consideration of the conveyance by Heins to plaintiff. Such deed operated to convey the title held by him to plaintiff, subject, of course, to the equities attaching to it in his hands; and she may enforce the lien to the same extent that he could have enforced it, had he not conveyed to her. Such is manifestly the plaintiff's position and equitable right, unless, as appellees contend, she is to be barred of such right on the theory that she accepted the conveyance as a part of a fraudulent scheme to defraud the creditors of Snouffer,—a question to which we now give attention.

As preliminary thereto, it will be helpful to consider the condition of Snouffer financially at that time, as disclosed by

3. FRAUDULENT
CONVEYANCES:
evidence.

the record. It appears, as already stated, that Heins took the conveyance from the bank in August, 1909, and at about the same time, took over, by assignment, several outstanding judgments. Heins thus became Snouffer's chief creditor,—indeed, so far as the record in this case is concerned, his only creditor. No creditor of Snouffer's seeking relief in this action asserts a claim which antedates the lien which Heins so acquired in 1909. The two judgments held by the interveners were not obtained until 1914, and did not become liens on Snouffer's property until February 26, 1916. No creditors other than the interveners are parties to this action, or asserting any demand for equitable relief, except as it may be said that their interests are represented by the administratrix; and all the showing she makes is the presentation of a list of claims filed against the estate, and all of such claims, so far as they bear date, have accrued since Heins acquired his title from the bank. There is, therefore, nothing shown to cast suspicion upon the good faith of that transaction as being in fraud of creditors; for, as we have already noted, the net result of the deal was that Heins became and was the only existing creditor of Snouffer, and no one was or could be thereby hindered or delayed in the collection of claims against him. The deed to Heins was a legitimate method of securing the debt owed to him, and being at once duly recorded, imparted notice to the world of the priority of his lien for that amount. In the absence of fraud or conduct amounting to an estoppel on his part, no subsequent purchaser or creditor could dislodge or displace his lien. The liens acquired by the interveners, by virtue of the judgments rendered in 1914, and not filed until 1916, were necessarily junior thereto. The only way to avoid this conclusion would be by a showing that Snouffer was not indebted to Heins at all, and that the latter took and held the title in secret trust for the former. Such, indeed, is the proposition of appellees' counsel in argument, but it is not justified by the record. Unfortunately, the death of both Heins and Snouffer renders it difficult, and to some extent impossible, to get direct evidence of all the details of their dealings; but it does sufficiently appear that the money required to satisfy the claim of the Cascade Bank was advanced by Heins, and that the consideration for the assignments of the

several judgments then outstanding was furnished by him, as well as numerous other advancements of a miscellaneous character. True, there were partial payments and substantial credits allowed, but that there was at all times a substantial remainder of unpaid indebtedness to Heins, is hardly open to dispute. When the prospect of Heins's death made it desirable that the matter should be adjusted, Snouffer did not know definitely the amount of his indebtedness secured by the Heins title, but in appealing to plaintiff for her aid, he estimated it at something like $12,000; but when plaintiff came to deal directly with Heins, he consented to accept $5,000 in full of all his claims. This amount was raised by the act of plaintiff and Mrs. Benjamin, pledging their own property as security, and the money was paid to Heins, who thereupon made the deed in controversy to plaintiff. His acceptance of this payment and his conveyance to plaintiff of the title which he held as a mortgage to secure it, operated as an assignment to her of his claim and of the lien evidenced by the deed he had received from the bank. If, instead of a trust deed, the bank had held a mortgage in the usual form upon the property, and in consideration of the payment by Heins of the amount of its claim, the bank had assigned the mortgage to him, it would hardly be questioned that he thereby became vested with the rights of the mortgagee, and entitled to enforce the mortgage lien; and if so, *his* subsequent assignment of such mortgage to a third person would vest a like interest and right in his assignee. And if such right would follow the assignment of a mortgage, it would likewise follow the transfer of a title by a deed which had been given as a mortgage. The point argued by counsel for appellees, that the payment to the bank operated to extinguish the title conveyed by the trust deed, and that the deed from the bank to Heins, therefore, conveyed nothing, is not well made, in the absence of any showing that the payment was, in fact, made by Snouffer, and not advanced by Heins. There is no such evidence. *Guinn v. Locke*, 1 Head (Tenn.) 110; *Rogers v. Davis*, 91 Iowa 730; *Hoile v. Bailey*, 58 Wis. 434; *Phelan v. Fitzpatrick*, 84 Wis. 240, 247; *Wilson v. McWilliams*, 16 S. D. 96 (91 N. W. 453). Indeed, the very fact that the decree in favor of the bank required it, upon receiving the amount of its claim, to make a deed to

Snouffer, or "to whomsoever he might direct," was a manifest recognition of the fact that, in all probability, he could not, of his own means, meet such demand at once, and would of necessity have to avail himself of the security afforded by the property, to raise the amount necessary to save it. If, therefore, instead of an attempt to obtain the necessary funds by negotiating another loan or executing a new trust deed or mortgage, the same end was accomplished by the act of Heins in advancing the amount needed, and taking over the security held by the bank, no one was injured, and no one defrauded. This, we think, is the settled rule of the authorities. See *Mott v. Fiske*, 155 Ind. 597 (58 N. E. 1053); *Hawkins v. Elston*, 58 Col. 400 (146 Pac. 254); *While v. Knapp*, 8 Paige Ch. 173; *Hoy v. Bramhall*, 19 N. J. Eq. 563, 567; *Graves v. Mumford*, 26 Barb. (N. Y.) 94. There is no pretense that Heins was a mere stranger or volunteer or intermeddler, and therefore entitled to no protection. While representing Snouffer and advancing money in his behalf, he was, at the same time, securing its repayment by the conveyance or assignment from the bank and from the holders of judgment liens then existing. This he had the right to do, and equity will recognize and sustain the priority of his security, as against subsequent purchasers and creditors. If Heins could have rightfully asserted the priority of his claim, no valid reason can be assigned for denying such right to his assignee, who purchased his claim, and took conveyance of the title held by him as security. No creditor is hindered, delayed, or defeated in the enforcement of his claim in any other manner or to any greater extent because the title to the security has been sold or transferred to plaintiff, than would be the case had such transfer not been made, and Heins were himself still living, and asserting his rightful priority. The material question, so far as the junior creditors and lien holders are concerned, and so far, also, as the administratrix is concerned, is the validity of the lien acquired by Heins; and that being established, it is wholly immaterial that Heins transferred his right and interest to the plaintiff. No one is thereby injured or defrauded. The right of the administratrix to administer and settle the estate is in no degree diminished, and the assets of the estate available for the payment of claims are not lessened by a

dollar. We are of the opinion, therefore, that, the trial court having properly found that the title was taken and held by Heins as security, its decree should have recognized and sustained plaintiff's right, as Heins's assignee, to the benefit of such security, and awarded her priority accordingly, to the extent of her payment to Heins. That amount is shown without dispute to have been $5,000. Her claim to priority in excess of the sum actually paid to Heins, and interest thereon from July 21, 1917, cannot be upheld.

IV. It appears to be fairly established that, at the time plaintiff took the deed from Heins, Snouffer was already indebted to her and Mrs. Benjamin to the amount of about $8,000, and this indebtedness entered into the consideration for such conveyance, upon Snouffer's promise to pay it at an early date. The title taken from Heins not only vested plaintiff with the security afforded by the Heins loan, but, as between plaintiff and Snouffer, she acquired a lien upon the property for payment of this personal indebtedness. At this time, however, the rights of the interveners had accrued by virtue of their judgment liens; and plaintiff's security for such personal indebtedness is necessarily junior thereto. In other words, while plaintiff holds the first lien upon the property, as security for the Heins claim, to the extent of the consideration paid therefor by her, the liens of the interveners' judgments are next in order and next in right, followed by plaintiff's lien for the amount of Snouffer's debt to her and Mrs. Benjamin. Subject to the liens thus established, the property in controversy is an asset of the Snouffer estate.

4. JUDGMENT:
lien: attempt to
displace lien.

V. Accepting the correctness of appellees' contention, and of the trial court's finding that the conveyance to Heins was, in fact, made and intended as security for the payment of Snouffer's debt, it is difficult to see what there is in the transaction of which defendants can justly complain, as a fraud upon the creditors of his estate. The question as between Heins (or his assignee) and the interveners is solely one of priority of liens, a proposition which is in no wise affected by the deed from Heins to plaintiff. A conveyance by which no property or property right which might otherwise have been subject to levy

or seizure upon execution in favor of a creditor has been removed or concealed or otherwise placed beyond the reach of such writ, is not fraudulent; and we think it must be said that the purchase by plaintiff of the Heins title did not operate to produce any such result. The principle underlying the law by which fraudulent conveyances are annulled is simply that a debtor's property shall not be fraudulently diverted from the payment of his debts. Neither law nor equity treats a fraudulent conveyance as in any sense enlarging the rights of creditors; but in the event that the alleged fraud is established, it permits them to proceed against the property as if the conveyance had not been made. The right of the interveners, at the date of the deed to plaintiff, was to have their judgment liens enforced, subject to the prior lien held by Heins; and the conveyance by Heins to plaintiff did not, as we have already noted, operate or tend to defeat that right. Subject to those liens, Snouffer could rightfully prefer plaintiff and Mrs. Benjamin by mortgage or deed to the extent of his bona-fide indebtedness to them, and by giving this effect to the conveyance of July 21, 1917, the general creditors are not wronged. Their recourse upon the property and estate of Snouffer for the collection of their claims, subject to prior valid liens, still subsists.

Much is said in argument upon the extravagant claims of the plaintiff, as indicating fraud; and it is to be admitted that the claim primarily asserted by her was largely in excess of what she may properly recover in this action. It seems to have been the theory of her counsel that the conveyance from Heins vested her with the right, not merely to recover what she paid for the Heins title, but to add thereto the amount of the judgments of which he had taken assignments, and reassigned to her. But in our view, while she had the right to purchase Heins's lien, and to be protected in the title so acquired, to the extent of her investment therein, she could not be allowed to increase the burden of her priority over subsequent creditors by adding to her actual investment, as a profit, the amount of real or apparent discount made by Heins. Were the deeds from the bank to Heins and by him to plaintiff to be treated as absolute conveyances, and not as in the nature of mortgages, a somewhat different question might arise. But the fact that such

excessive claim was asserted does not necessarily taint the transaction with fraud. And even though it should appear that such transaction is open to suspicion of a purpose to place the property beyond reach of creditors, yet, in the absence of any accomplished fraud, a court of equity may yet properly sustain the conveyance as security for a bona-fide indebtedness owed to the grantee, and may subject the excess to the claims of complaining creditors. *Keeder v. Murphy,* 43 Iowa 413; *Stamy v. Laning,* 58 Iowa 662; *Lyon v. Haddock,* 59 Iowa 682. *Boyd v. Dunlap,* 1 Johnson Ch. 478, is a frequently cited case in which Chancellor Kent, speaking of a transfer by father to son in professed payment for debt, where creditors were attacking the conveyance as fraudulent, says:

"The only question with me has been whether the plaintiffs ought to be left to their legal remedy, or whether the case affords sufficient ground for a limited interference, by allowing the deed of the real estate to stand as a security only for such consideration as has been shown by the younger Dunlap. There appears to be very considerable inadequacy of price, even admitting the consideration expressed in the deed; and to allow the deed to stand as security only for the true sum due, would be doing justice to the parties, and granting a relief which cannot be afforded at law."

To like effect is *Morrell v. Sharp,* (Iowa) 74 N. W. 749 (not officially reported); *Gaar, Scott & Co. v. Hart,* 77 Iowa 597; *Leqve v. Stoppel,* 64 Minn. 74 (66 N. W. 208, 211); *Anderson v. Fuller,* McMullan's Eq. (S. C.) 27 (36 Am. Dec. 290); *Sanford v. Wheeler,* 13 Conn. 164; *Horton v. Bamford,* 79 N. J. Eq. 356 (81 Atl. 761, 771, Paragraph 13); *Cox v. Collis,* 109 Iowa 270; *Thomas v. Beals,* 154 Mass. 51; *Demarest v. Terhune,* 18 N. J. Eq. 45, 532, 539; *Coley v. Coley,* 14 N. J. Eq. 350.

Indeed, counsel for appellee virtually concede, in argument, the soundness of the rule recognized by the cited cases. Their brief is very largely devoted to the proposition that, notwithstanding, the deeds from the bank to Heins and from Heins to plaintiff did not divest Snouffer of his beneficial ownership; and in so doing, they say, in substance, that, if the plaintiff acquired any right by these conveyances, it was, at most, a lien for the amount of her payment to Heins. It is also pointed out

that, at the utmost, plaintiff's equity would be limited to this payment and the amount of Snouffer's debt to herself and Mrs. Benjamin, aggregating $13,014.12; of which counsel say, "If this, together with subsequent advances, had been the measure of her claim of Snouffer's obligations, it might perhaps be credible;" but that the excess of her demands beyond that sum is clearly inequitable. The correctness of that contention we are disposed to concede; but in rejecting such excess, and holding the deeds to be effective as security only, we discover no satisfactory evidence of a fraudulent purpose on part of the plaintiff which requires a court of equity to deny her all relief. To call for such drastic holding requires clear proof of actual intended fraud,—something more than mere possible or constructive fraud. To adopt the language of the New Jersey court in *Demarest v. Terhune,* supra, where a deed by father to son was attacked as fraudulent because, among other things, the title was taken in professed payment of a debt owed to the son, and it was shown that the actual consideration was materially less than the value of the property, it is there said that, to set aside the deed, it must be made to appear "that the grantee took the conveyance of the property with a view to protect the property of the debtor from his other creditors, and *not* to save his own debt." The same case appears again at page 532 of the same volume, where, after finding that the transfer of title was marked by many suspicious circumstances, including the family relation of the parties, the court says that to hold that the grantee was barred of all relief would be "unnecessarily severe;" and a decree was ordered by which the conveyance was sustained to the extent of the consideration paid for it, but set aside as to the excess.

Applying the rule of the cited cases to the record, an equitable result will be accomplished by a decree along the lines already pointed out, declaring the beneficial ownership of the property to have been in Snouffer, establishing the plaintiff's first lien thereon for the amount of the consideration paid by her for the Heins title, and subject thereto, confirming the liens of the judgments held by the interveners, followed by plaintiff's lien for the amount of Snouffer's personal debt to her and Mrs. Benjamin. The remnant, if any, of said property, when these

equities are satisfied, will constitute part of Snouffer's estate.

We omitted to mention at the proper place that the claims of Mrs. Benjamin in the matters here being litigated were assigned to the plaintiff, who represents her interests.

It is also proper to say that the examination of the record and the reaching of a satisfactory conclusion have been, in some respects, rendered very difficult by the fatality which seems to have marked the case in the course of the years of its development. Snouffer and Heins both died, soon after the transaction of July 21, 1917. Snouffer's mother, who figured in the title to the land, and in the making of the trust deed to Beatty for the Cascade Bank, is dead, as is also Beatty himself. Several of the lawyers who, at one time or another, have had some part in the multitudinous proceedings affecting the property, have passed away, so that the best evidence now obtainable is not always free from obscurity and doubt; but in our best judgment, the conclusions we herein announce are fairly borne out by the record.

For the reasons stated, the decree appealed from is affirmed in part and reversed in part, and the cause is remanded to the trial court below, for the entry of a final decree in accordance with the views above expressed.—*Affirmed in part; reversed in part; and remanded.*

Stevens, C. J., Preston and De Graff, JJ., concur.