C. MAC CHAMBERS COMPANY, INC., Appellee,

v.

IOWA TAE KWON DO ACADEMY, INC.; Acta Fitness Center, Ltd.; In Mook Kim and Ki Tae Kim, Appellants.

KRAGIE–NEWELL ADVERTISING, INC., Appellee,

v.

IOWA TAE KWON DO ACADEMY, INC.; Acta Fitness Center, Ltd.; In Mook Kim and Ki Tae Kim, Appellants.

No. 86–135.

Supreme Court of Iowa.

Sept. 23, 1987.

Rehearing Denied Oct. 22, 1987.

---

Mark Godwin, Des Moines, for appellants.

Kevin M. Reynolds, and Robert M. Holliday, Des Moines, for appellees.

HARRIS, Justice.

A closely held corporation failed and was immediately supplanted by a separate corporation. Both were owned and operated by members of the same family. The business continued without interruption. Creditors of the failed corporation brought actions on several theories, seeking to recover against the succeeding corporation and the family member who was its sole shareholder and director. We think the creditors may recover actual but not punitive damages.

For more than fifteen years In Mook Kim, a native of Korea, has operated physi-

cal fitness and martial arts teaching centers in Iowa. Incorporating his businesses under several different names, Kim has served as their sole shareholder, officer, and director. The defendant Iowa Tae Kwon Do Academy, Inc. [hereafter Academy I][1] was one such enterprise. When it became heavily indebted to the small business administration (SBA) and various other creditors, some of its equipment (the subject of an SBA security agreement) was repossessed and sold at auction.

Plaintiff C. Mac Chambers sold insurance protection to Academy I in the amount of $2861.43. Plaintiff Kragie-Newell provided advertising services totaling $9711.95.

In the winter months of 1983 Kim's business was on the brink of bankruptcy. Deeply in debt and unable to satisfy its creditors, the corporation and its principal officer began searching desperately for a solution. Kim's son, defendant Ki Tae Kim, offered to help his father "hit upon a plan which ... would satisfy his family obligations" to the community.

On the advice of counsel, Ki Tae Kim filed for a change of the corporation's name on January 31, 1984. On the same day, the newly named corporation ceased doing business.[2] On February 1, 1984, Ki Tae Kim formed a new corporation, the defendant ACTA Fitness Center, Ltd. [Academy II], in which he was to serve as sole shareholder, director, and corporate officer. The purpose of these changes was to avoid Academy I's debts and to help the Kim family continue operating its business, unencumbered by past obligations.

In February 1984 Academy II purchased the accounts receivable from Academy I for about $10,000. The former corporation's remaining inventory, encumbered by the secured claims of other creditors, was purchased by Academy II for approximately $20,000. In Mook Kim was installed as Academy II's vice president and principal instructor, remaining responsible for the venture's "day-to-day operations." At the

---

1. Formerly known as Kim's Academy of Tae Kwon Do, Inc. and Kim's Academy of Tae Kwon Do and Judo, Inc.

2. Despite the business cessation of Academy I the defendants made no attempt to formally dissolve the corporation, to pay off its debts, or to liquidate its assets.

time of sale Academy II claims to have assumed no debts from Academy I; however the evidence is clear that Academy II paid Academy I's rent, overhead expenses, utility bills, tax obligations, and some back wages. Academy II also paid personal expenses of the Kim family. Academy II retained all of Academy I's employees and instructors, operating the business at the same location and with the same equipment as before (except for the equipment repossessed by the SBA).

Plaintiffs brought separate actions naming Academy I, Academy II, In Mook Kim and Ki Tae Kim as defendants. Both suits sought compensatory and punitive damages against the defendants, alleging they had failed to pay on open accounts, violated various principles of the bulk sales law, and effectuated various financial transfers in an attempt to defraud, delay, and hinder creditors.

The cases were consolidated for a bench trial. The trial court dismissed the bulk sales counts, but entered judgments against all defendants on all remaining counts. Because the trial court concluded the defendant corporations were undercapitalized and changed ownership only nominally, it pierced the corporate veils of Academy I and Academy II, rendering defendants In Mook Kim and Ki Tae Kim jointly and severally liable on the judgment. The trial court decision also assessed punitive damages of $5000 against each of the four defendants.

We transferred the case to the court of appeals which reversed the judgment against Academy II and Ki Tae Kim on the ground plaintiffs were not damaged because their accounts were without value at the time of the alleged fraudulent transfer. The court of appeals limited the plaintiffs' recovery to amounts due on account, plus interest, against defendants In Mook Kim and Academy I.

The matter is before us on a grant of plaintiff's petition for further review.

I. We view the evidence in the light most favorable to sustaining the district court judgment. *Murray v. Conrad*, 346 N.W.2d 814, 817 (Iowa 1984). The trial court's findings are construed liberally in order to support its result. *Koehler v. State*, 263 N.W.2d 760, 761–62 (Iowa 1978). A finding is supported by substantial evidence if it may be reasonably inferred from the evidence. *Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 808 (Iowa 1978). If supported by substantial evidence and justified under the law, the findings are binding on us and the judgment will not be disturbed on appeal. *Carson v. Mulnix*, 263 N.W.2d 701, 705 (Iowa 1978). We may of course inquire into the correctness of the trial court's legal conclusions. *Id.* at 706.

■ The possibility of drawing inconsistent conclusions from the same body of evidence does not prevent a finding from being supported by substantial evidence. *Baty v. Binns*, 354 N.W.2d 777, 780 (Iowa 1984). If the meaning of a trial court's decree is "obscure or ambiguous, resort may be had to the pleadings and other proceedings in the case in order to determine its meaning." *Sutton v. Schnack*, 224 Iowa 251, 257, 275 N.W. 870, 873 (1937).

■ II. The judgment should be affirmed if any of the various theories of liability found by the trial court were valid and supported by substantial evidence. The court of appeals, as noted, reversed the judgment against Academy II and Ki Tae Kim and, insofar as the reversal was based on a fraudulent conveyance theory, it was correct. For a conveyance to be set aside as a fraud on creditors, it is necessary to show they were prejudiced, even where there was actual fraudulent intent. *McClelland v. Snouffer*, 194 Iowa 1387, 1396, 189 N.W. 808, 814 (1923). We have interpreted prejudice or injury to mean the creditors must be able to show they would have received something which has become lost to them by reason of the conveyance. *See Hagge v. Gonder*, 222 Iowa 954, 270 N.W. 371 (1936); *Hewitt v. Blaise*, 202 Iowa 1109, 211 N.W. 479 (1926); *Willey v. Hite*, 175 Iowa 657, 149 N.W. 250 (1916).

■ Plaintiffs cannot show they would have received anything had Academy I not

conveyed its assets to Academy II. The value of the assets transferred totaled about $7000. All were subject to a perfected security interest held by the SBA in an amount exceeding $30,000. Because both plaintiffs had unperfected security interests, SBA's claim to the transferred assets was superior to either of the plaintiffs'. Since the amount of assets transferred is less than the amount of the perfected security interest, plaintiffs would not have received any money had the assets been sold at public auction and the creditors paid with the proceeds.

III. Plaintiffs' suits include a continuing corporation theory.[3]

■ A successor corporation will be held liable for the debts of its predecessor when: (1) there is an express agreement to assume liability; (2) there is a consolidation or a merger; (3) the purchasing corporation is a "mere continuation" of the selling corporation; or (4) the transaction is fraudulent. *Nelson v. Pampered Beef-Midwest, Inc.*, 298 N.W.2d 281, 287 (Iowa 1980).

Defendants insist that, to find liability under a continuing corporation theory, two things must be shown: (1) there must be a common identity of officers, directors, and shareholders; and (2) only one corporation must exist at the completion of the sale of the assets. Because In Mook Kim was the sole director, officer, and shareholder of Academy I and Ki Tae Kim is the sole director and shareholder of Academy II, and because both corporations were still in existence after the sale of assets, defendants contend Academy II cannot be deemed a mere continuation of Academy I.

■ We disagree. While the two foregoing factors are traditional indicia of a continuing corporation, neither is essential. *Weaver v. Nash Intern., Inc.*, 562 F.Supp. 860, 863 (S.D.Iowa 1983); *see also Tucker v. Paxson Machine Co.*, 645 F.2d 620, 623 (8th Cir.1981). In *Arthur Elevator Co. v. Grove*, 236 N.W.2d 383 (Iowa 1975), a corporation was held to be a mere continuation of a prior partnership even though there

was not common identity of directors, officers, and shareholders. *Id.* at 392.

■ In Mook Kim testified that his business remained the same after the sale of the assets of Academy I to Academy II. Substantial evidence supports this statement. The location of the business, the identity of its employees and instructors, the equipment used to carry out the business, and even the corporation's telephone number remained unchanged after the sale. There was also the same lease, the same trade name, the same books, and the same students. In Mook Kim is an officer of both corporations. The mere fact that Ki Tae Kim is the sole director and shareholder of Academy II is of little significance here, given the fact that In Mook Kim is really the person in charge. Ki Tae Kim did not pay for any of the shares of stock issued to him, nor is he involved in the running of the business.

It is apparent that Ki Tae Kim was made the sole director and shareholder for only one reason: to attempt to avoid liability under the continuation corporation theory (believing that lack of common directors and shareholders would be the downfall of any continuation corporation argument). Given all the other indicia of a continuing corporation it should not matter that, while his father really runs the business, Ki Tae Kim is the sole director and shareholder. We think substantial evidence supports trial court's conclusion that Academy II was a mere continuation of Academy I. The trial court was correct in so holding.

IV. The next question is whether Academy II's veil was properly pierced by the trial court to enforce the award of compensatory damages against Ki Tae Kim.

■ A corporate veil may be pierced only under "exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *Briggs Transp. Co. v. Starr Sale*

---

**3.** Contrary to defendants' reservations, we think this theory was adequately pled, argued, and considered by the trial court so as to be pre-

served for review. *See* Iowa R.Civ.P. 69(b); *Arthur Elevator Co. v. Grove*, 236 N.W.2d 383, 391 (Iowa 1975).

*Co.*, 262 N.W.2d at 810 (citing *Newberry v. Barth, Inc.*, 252 N.W.2d 711, 714 (Iowa 1977)). Plaintiffs bear the burden of proving that exceptional circumstances exist which warrant piercing the corporate veil. *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 180 (5th Cir.1981). Relying on *Lakota Girl Scout Council, Inc. v. Havey Fund Raising Management*, 519 F.2d 634, 638 (8th Cir.1975), we stated in *Briggs* that the factors to be considered in deciding whether a corporate veil should be pierced include whether:

(1) the corporation is undercapitalized,

(2) the corporation lacks separate books,

(3) its finances are not kept separate from individual finances, or individual obligations are paid by the corporation,

(4) the corporation is used to promote fraud or illegality,

(5) corporate formalities are not followed, or

(6) the corporation is a mere sham.

262 N.W.2d at 810 (citing W. Fletcher, *Encyclopedia of the Law of Private Corporations* § 41.3 (1974)). With respect to which individuals should suffer personal liability on the corporation's obligations, we said:

> An abuse of the corporate privilege may justify piercing the corporate veil as to persons who actively participate in the conduct of corporate affairs and have provided inadequate capitalization. *See Anderson v. Abbott*, 321 U.S. 349, 362, 64 S.Ct. 531, 537–38, 88 L.Ed. 793, 802–03 (1944)....

*Briggs Transp. Co.*, 262 N.W.2d at 810. Citing H. Ballantine, *Corporations* § 129, at 302–03 (rev. ed. 1946), we concluded:

> If a corporation is organized and carries on business without substantial capital ... [so] the corporation is likely to have no sufficient assets available to meet its debts, it is inequitable that shareholders should set up such a flimsy organization to escape personal liability. The attempt to do corporate business without providing any sufficient basis of financial responsibility to creditors is an abuse of the separate entity and will be ineffectu-

al to exempt the shareholders from corporate debts.

*Briggs Transp. Co.*, 262 N.W.2d at 810.

■ At no time did Ki Tae Kim offer any consideration for his 1,000 shares of stock in Academy II and by his own admission he made no capital contribution to the venture. As stated in *Briggs*, shareholders will not escape personal liability by setting up a corporation which does not have sufficient assets available to meet its debts. 262 N.W.2d at 810. We also note that individual obligations of the Kim family were routinely paid by both corporations and Kim family finances were not kept separate from corporate accounts.

There was no error in the trial court's award of compensatory damages in favor of the plaintiffs and against Academy II and Ki Tae Kim.

V. The trial court's judgment assessed punitive damage awards of $5000 against each of the four defendants. As did the court of appeals, we find the facts do not support an award for punitive damages and disallow them.

Exemplary or punitive damages are recoverable in order "to punish the party against whom they are awarded and to deter others from similar wrongdoing." *Grefe v. Ross*, 231 N.W.2d 863, 868 (Iowa 1975). We have held such damages are appropriate

> where defendant acts maliciously, but malice may be inferred where defendant's act is illegal or improper; where the nature of the illegal act is such as to negative any inference of feeling toward the person injured, and is in fact consistent with a complete indifference on the part of defendant, liability for exemplary damages is not based upon the maliciousness of the defendant but is based, rather, upon the separate substantive principle that illegal or improper acts ought to be deterred by the exaction from the defendant of sums over and above the actual damage he has caused.

*Northrup v. Miles Homes, Inc. of Iowa*, 204 N.W.2d 850, 859 (Iowa 1973) (quoting *Syester v. Banta*, 257 Iowa 613, 628–29, 133 N.W.2d 666, 676 (1965)).

Notably, punitive damages may be awarded where a defendant is found guilty of fraud. *Syester v. Banta,* 257 Iowa at 628–29, 133 N.W.2d at 676. They may be awarded against directors and officers of sham corporations when a corporate veil is pierced. *Briggs Transp. Co.,* 262 N.W.2d at 811. They may be awarded against corporations. *Northrup,* 204 N.W.2d at 858–59.

Nevertheless we do not think defendants' conduct here, though ample to form the basis of liability for compensatory damages, was sufficiently wrongful to support a punitive damage award. There was no direct evidence of malice. Moreover, defendants' conduct was not so improper as to raise any inference of malice. Rather, defendants were acting on the advice of counsel in a straightforward attempt to stay in business. Counsel undoubtedly believed our cases made this possible. We think not, but our disagreement does not render the situation appropriate for punitive damages.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT MODIFIED AND AFFIRMED.

All justices concur except CARTER and SCHULTZ, JJ., who concur in part and dissent in part, and REYNOLDSON, C.J., who takes no part.

CARTER, Justice (concurring in part and dissenting in part).

I concur in the denial of punitive damages and the affirmance of the judgments for actual damages against all defendants except Ki Tae Kim. I dissent from the judgment against the latter defendant.

Plaintiffs in this action are asserting creditors' claims arising from commercial transactions with Iowa Tae Kwon Do Academy, Inc., an Iowa corporation of which Ki Tae Kim was neither an officer, director, shareholder, or employee. Ki Tae Kim had no involvement whatsoever with these transactions in any capacity. The activities of the corporation were carried on entirely by In Mook Kim.

After the transactions with plaintiffs had been concluded, In Mook Kim arranged with Ki Tae Kim to organize Acta Fitness Center, Ltd., another Iowa corporation. Ki Tae Kim, as sole shareholder, officer and director of the latter corporation succeeded to the going business operation of Iowa Tae Kwon Do Academy, Inc. consisting primarily of its patrons. As the court of appeals found, there was no net asset value transferred from Iowa Tae Kwon Do to Acta.

Both Iowa Tae Kwon Do and Acta were formed without payment of value to the corporations for subscription of stock. Consequently, the majority is correct in visiting personal liability on In Mook Kim for those transactions which he carried out through the corporate shell of Iowa Tae Kwon Do. Moreover, the "continuation corporation" theory supports the liability imposed on Acta for these creditors' claims. In contrast, however, neither the continuation corporation theory nor the "piercing" theory espoused by the majority will support a judgment against Ki Tae Kim for the claims of Iowa Tae Kwon Do creditors. The concept of piercing the corporate veil is a theory whereby individuals who engage in activities in the name of a corporation may, under certain limited circumstances, be held personally liable for such activities. Because Ki Tae Kim engaged in no activities either personally or in the name of a corporation with these plaintiffs, the theory has no applicability to him, regardless of whether he gave value for his stock.

In regard to the claims that Ki Tae Kim aided and abetted the effort to place the assets of Iowa Tae Kwon Do beyond the reach of its creditors, this would render him personally liable only to the extent of the harm caused the plaintiffs. I agree with the conclusion of the court of appeals that no harm was caused the plaintiffs from concealment of Iowa Tae Kwon Do assets because the corporation had no assets available for payment of creditors' claims. Indeed, it appears that through Ki Tae Kim's efforts in operating Acta he has created assets in that corporation through patrons' dues upon which plaintiffs have

levied execution. In view of our holding on the continuing corporation issue, the organization and operation of Acta has benefited plaintiffs in collecting their claims rather than hindering them.

SCHULTZ, J., joins this concurrence in part and dissent in part.