# IN THE COURT OF APPEALS OF IOWA

No. 16-2045
Filed February 7, 2018

**LADDIE NACHAZEL FAMILY LIVING TRUST,**
     Plaintiff-Appellant,

**vs.**

**JKLM, INC. and KARI DEARBORN**
     Defendants-Appellees.
_____

Appeal from the Iowa District Court for Jones County,  Ian K. Thornhill, Judge.

The Laddie Nachzael Family Living Trust appeals the district court order denying its request to pierce the corporate veil of JKLM, Inc.  **AFFIRMED.**

Gerald J. Kucera of Gerald J. Kucera, Attorney, Cedar Rapids, for appellant.

Bradley J. Kasper and Mathew G. Novak of Pickens, Barnes, and Abernathy, Cedar Rapids, for appellees.

Heard by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**BOWER, Judge.**

The Laddie Nachzael Family Living Trust appeals the district court order denying the request to pierce the corporate veil of JKLM, Inc. We find JKLM was undercapitalized but the corporation's finances were not co-mingled with the finances of its shareholders, and the corporation followed corporate formalities. We find the Trust was unable to prove the corporate veil should be pierced. We affirm the district court.

## I. Background Facts and Proceedings

The Trust was set up as a form of estate planning. Laddie was the trustee and used trust assets to purchase a Paul Revere's Pizza franchise in Anamosa. Laddie's son, Jerome, managed the business until he accepted a full-time position with UPS. Laddie and his wife took over managing the business. Eventually, Laddie sold the business in order to spend more time with his grandchildren and to have weekends free. In 2008, the Trust sold the business to an individual who defaulted. After the default, the Trust retook possession in 2012.

On July 2, 2012, the Trust entered into a written agreement to sell the business to JKLM on contract. The building the business was located in was sold separately to Dearborn Enterprises, Inc. Kari Dearborn was the president of JKLM and signed the purchase contract as "Kari Dearborn, president." Laddie testified he was unaware the sale would be to a corporation until the day of the sale, but because Kari had previously done work for the business, he "trusted her." The Trust did not ask for a personal guaranty from Kari but did have an attorney prepare and file financing statements against the equipment sold as part

of the business. The agreement showed a purchase price of $120,000 and required $15,000 as a down payment.

JKLM was incorporated June 19, less than a month before the purchase of the business. Statements show JKLM had only $3000 in assets at the time of the purchase and borrowed the other $12,000 for the down payment from Dearborn Enterprises, a related entity. During the period JKLM ran the business, loans were made to family members from the corporation.

JKLM made monthly payments to the Trust for more than two years, but citing the inability to find part-time employees, closed. The last payment to the Trust was made July 24, 2014. The Trust filed a petition on March 3, 2015, alleging breach of contract and claiming the corporate veil should be pierced. Trial was held July 19 and 20, 2016.

The district court entered its ruling on September 29, finding the contract was breached. However, the district court held the Trust had not sufficiently proven facts existed to pierce the corporate veil. The Trust now appeals.

## II. Standard of Review

We review actions tried at law for a correction of errors at law. *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 179 (Iowa 2010). We are bound by the trial court's findings if they are supported by substantial evidence. *Id.* Whether or not the corporate privilege was abused is a question of fact. *See Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 872 (Iowa 1984) (approving of the court of appeals opinion as to designation as question of fact). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999). If the trial

court used an erroneous or improperly applied a rule of law that will materially affect its decision, we will reverse on appeal. *Land O'Lakes, Inc. v. Hanig*, 610 N.W.2d 518, 522 (Iowa 2000).

We may pierce the corporate veil in several circumstances.

> A court may disregard a corporate structure by piercing the corporate veil only under circumstances "where the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *C. Mac Chambers Co. v. Iowa Tae Kwon Do Acad[.], Inc.*, 412 N.W.2d 593, 597 (Iowa 1987) (quoting *Briggs Transp. Co, Inc. v. Starr Sales Co.*, 262 N.W.2d 805, 810 (Iowa 1978)).
>
> The burden is on the party seeking to pierce the corporate veil to show the exceptional circumstances required. *C. Mac Chambers*, 412 N.W.2d at 598. Factors that would support such a finding include (1) the corporation is undercapitalized; (2) it lacks separate books; (3) its finances are not kept separate from individual finances, or individual obligations are paid by the corporation; (4) the corporation is used to promote fraud or illegality; (5) corporate formalities are not followed; and (6) the corporation is a mere sham. *Id.* (citing *Briggs*, 262 N.W.2d at 810).

*In re Marriage of Ballstaedt*, 606 N.W.2d 345, 349 (Iowa 2000). This list is not exhaustive. *Boyd v. Boyd & Boyd*, 386 N.W.2d 540, 544 (Iowa Ct.App.1986). We will pierce the corporate veil if to do otherwise would promote or protect fraud or injustice. *Id.*

## III. Piercing the Corporate Veil

The Trust claims JKLM: (1) co-mingled its finances with the finances of its shareholders and at least one related entity, (2) failed to follow corporate formalities, and (3) was undercapitalized. The district court made the following factual findings:

> [The Trust's expert] Mr. Hart testified that JKLM filed its Articles of Incorporation with the Iowa Secretary of State on June 19, 2012, which was about two weeks before the parties signed the Purchase Agreement. Mr. Hart believes JKLM is undercapitalized;

appears to follow almost no corporate formalities; and funds went from JKLM to Dearborn family members and related business entities, which resulted in a commingling of the corporate funds.

Mr. Hart's opinion about JKLM's undercapitalization is based on the fact that JKLM had only $3000 in the bank at the time it agreed to the $120,000 purchase at issue in this matter, and JKLM borrowed funds from a related entity. Mr. Hart testified that a bank would not lend money in such a scenario, and it shows woeful undercapitalization. According to Mr. Hart, these facts show JKLM was not prepared to handle a transaction of the size at issue in the case with its own capital. . . .

As to corporate formalities, Mr. Hart testified that until November, 2015, there are no records of stock being issued; no record of annual meetings; no record of the adoption of by-laws; and no record of any unusual transactions such as a lease with a separate entity. . . . Mr. Hart believes that none of the actions apparently advised by [JKLM's expert] Mr. O'Shea were done at the appropriate time. According to Mr. Hart, when a corporation fails to take these actions, the owners do not get limited liability protection because no corporation truly was formed.

With respected to the allegation that funds were improperly comingled, Mr. Hart points out that there were several loan or payments to Kelsi Dearborn (Kari's daughter) totaling about $17,000, some of which were made after July, 2014. . . .

. . . .

Mr. O'Shea testified that the initial capitalization of [$3000] was in the normal course of business, and JKLM was able to pay its bills and creditors for two years before the restaurant closed. Mr. O'Shea sees no problem with a small family held corporation borrowing money from a related entity for capital. Mr. O'Shea testified JKLM kept separate financial books and records as opposed to Kari, individually, making payments for JKLM.

With respect to the operations of JKLM, Mr. O'Shea believes JKLM took appropriate steps to keep its documentation in order. Mr. O'Shea testified that . . .the 2015 documentation served to ratify the prior acts of JKLM. Mr. O'Shea also testified that it is not unusual to complete this type of ratification documentation for a small corporation, and this documentation brought JKLM's internal records up to date. Mr. O'Shea views written consents, in lieu of meetings as a common practice.

. . . Mr. O'Shea sees no problem with the fact there was an oral lease between JKLM and Dearborn Enterprises, Inc. [a related entity in which Kari Dearborn served as an officer] for the lease of the business, and this is a common practice in small closely held, corporations. Mr. O'Shea believes the rental payments made by JKLM were fair market value, and JKLM kept separate bank accounts; filed separate tax returns; and paid payroll taxes. Mr.

O'Shea also testified that loans such as those made to Kelsi are proper corporate business activities, and the loans were in no way hidden from the shareholders. Mr. O'Shea does not see any commingling of assets in this case, in that there were clearly separate bank accounts; separate payments made; and separate tax returns.

. . . .

The Court finds no evidence that JKLM was a mere shell . . . . Further, the evidence at trial simply does not show any fraud on the part of Kari in creating JKLM, nor that she was acting in a manner to promote injustice. Rather, the evidence shows that JKLM was crated as the business entity in order for the restaurant to be purchased and operated with limited liability on the part of the Dearborn family.

Applying the factors necessary for creating a basis to pierce the corporate veil, the Court first finds that it cannot be found, as a matter of law, that JKLM was undercapitalized. The Court finds persuasive Mr. O'Shea's testimony that JKLM was adequately capitalized for the purposes of purchasing the restaurant. Kari's and Mr. O'Shea's testimony convincingly established that there were separate books and finances for the various Dearborn family entities, including JKLM. The Court finds no evidence that any individual obligations were paid by JKLM. There is no solid evidence of commingling of assets on the part of Kari or any other Dearborn family member. Mr. O'Shea convincingly testified that here is no problem with a small, closely held corporation borrowing money from a related entity for capital. There simply is no evidence in the record that JKLM was used to promote fraud of illegality. While the factor of following corporate formalities is a bit closer of a call, the Court relies on Mr. O'Shea's testimony in finding that the 2015 documentation was intended to essentially clean up JKLM's corporate record-keeping requirements, and on Mr. O'Shea's testimony that it is not unusual for a small corporation such as JKLM to use the type of ratification documents that were generated in 2015.

We find the district court's holding with regard to co-mingling is supported by substantial evidence. The "loans" made to shareholders were shown to have proper business purposes, such as reducing initial payroll expense, and do not represent co-mingling of assets. We agree with the district court's holding regarding the corporate formalities though we disagree with the reasoning. We acknowledge a corporation may ratify its prior actions including its corporate

formalities. However, at the time the Trust incurred the damages caused by JKLM's breach of contract, no ratification had been completed. A corporation cannot escape having its corporate veil pierced by ratifying corporate formalities long after the lawsuit has been initiated and damages caused. JKLM's corporate formalities displayed irregularities and did not perfectly follow corporate formalities. However, actions taken by the corporation and its officers substantially complied with normal business practices.

We also find the district court's finding the corporation was properly capitalized is not supported by substantial evidence. At its formation the corporation had only $3000 in assets. In order to make a down payment for the purchase of the business, JKLM borrowed $12,000 from a related entity. Even before purchasing the business, the corporation had four times as much debt as capital. After purchasing the business, JKLM had forty times as much debt as initial capital contribution. We find the capital contribution was insufficient to consider JKLM properly capitalized.

However, even taking undercapitalization into account, we find the Trust did not present sufficient evidence to show exceptional action was required. The balance of evidence shows JKLM was not operated as a mere shell and existed for a legitimate business purpose. Having shown no fraud or injustice, we determine the corporate veil should not be pierced. Therefore, we affirm the district court.

**AFFIRMED.**