Betty Jean DeLAPP, as Executor of
the Estate of Paul Erwin DeLapp,
Deceased, Appellant,

v.

XTRAMAN, INCORPORATED, A
Georgia Corporation, Appellee.

No. 86–1364.

Supreme Court of Iowa.

Dec. 23, 1987.

Joseph S. Cortese II of Jones, Hoffman
& Davison, Des Moines, for appellant.

Richard N. Winders of Herrick, Langdon
& Langdon, Des Moines, for appellee.

Considered by LARSON, P.J., and
CARTER, LAVORATO, NEUMAN and
SNELL, JJ.

SNELL, Justice.

On June 11, 1985, appellant Betty Jean
DeLapp, as executor of the estate of Paul
Erwin DeLapp, initiated the present prod-
ucts liability action, seeking compensatory
damages under a theory of strict liability
for Paul DeLapp's fatal injuries which al-
legedly resulted from his use of a defective
hoist. The petition alleges the hoist was
manufactured by Xtraman, Incorporated
(hereinafter Xtraman I), a Louisiana corpo-
ration, sometime prior to 1980. Appellee,
Xtraman, Incorporated (hereinafter Xtra-
man II), is a Georgia corporation which
allegedly purchased substantially all Xtra-
man I's assets in 1980, including equip-
ment, inventory, raw materials, parts, pat-
ents and trade name. Xtraman II, the sole
defendant to the suit, moved for summary
judgment, contending the petition failed to
state a cause of action under Iowa law.
The district court granted the motion and
this appeal followed.

I. *The Procedural Posture.*

DeLapp maintains the district court
erred by granting Xtraman II's motion for
summary judgment. The standards gov-
erning our review of summary judgment
determinations are well settled. Iowa Rule

of Civil Procedure 237(c) provides that summary judgment

> shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In reviewing the grant of summary judgment under this rule, the question is whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Suss v. Schammel,* 375 N.W.2d 252, 254 (Iowa 1985); *Brown v. Monticello State Bank,* 360 N.W.2d 81, 83–84 (Iowa 1984). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit, given the applicable governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at ——, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was incorrectly applied. *Adam v. Mt. Pleasant Bank & Trust Co.,* 355 N.W.2d 868, 872 (Iowa 1984). We examine the record in a light most favorable to the party opposing the motion for summary judgment to determine if movant met his or her burden. *Matherly v. Hanson,* 359 N.W.2d 450, 453 (Iowa 1984).

### II. *The Law.*

■ The general rule is that where one company sells or otherwise transfers all its assets to another company, the purchasing company is not liable for the debts and liabilities of the transferor. *Arthur Elevator Co. v. Grove,* 236 N.W.2d 383, 391 (Iowa 1975). This principle of corporation law is accepted by the majority of American jurisdictions. *See, e.g., Andrews v. John E. Smith's Sons Co.,* 369 So.2d 781, 785 (Ala.1979); *Bernard v. Kee Mfg. Co.,* 409 So.2d 1047, 1049 (Fla.1982); *Bulling-*

*ton v. Union Tool Corp.,* 254 Ga. 283, 284, 328 S.E.2d 726, 727 (1985); *Gonzales v. Rock Wool Eng'g & Equip. Co.,* 117 Ill. App.3d 435, 438–39, 72 Ill.Dec. 917, 920, 453 N.E.2d 792, 795 (1983); *Comstock v. Great Lakes Distrib. Co.,* 209 Kan. 306, 310, 496 P.2d 1308, 1311 (1972). Equally well accepted in this state as well as in others are four exceptions to this general rule. By virtue of those exceptions, a purchasing company may be liable for the debts and liabilities of the selling corporation if any of four circumstances exist: (a) there is an agreement to assume such debts or liabilities; (b) there is a consolidation of the two corporations; (c) the purchasing corporation is a mere continuation of the selling corporation; or (d) the transaction was fraudulent in fact. *Luedecke v. Des Moines Cabinet Co.,* 140 Iowa 223, 226, 118 N.W. 456, 457 (1908); *see, e.g., Andrews,* 369 So.2d at 785, *Bernard,* 409 So.2d at 1049; *Bullington,* 254 Ga. at 284, 328 S.E.2d at 727; *Gonzales,* 117 Ill.App.3d at 439, 72 Ill.Dec. at 920, 453 N.E.2d at 795; *Comstock,* 209 Kan. at 310, 496 P.2d at 1311; *Flaugher v. Cone Automatic Mach. Co.,* 30 Ohio St.3d 60, 62, 507 N.E.2d 331, 334 (1987).

■ Several courts have departed from these general rules, however, in actions such as the one at bar in which a plaintiff seeks compensation from a corporation which is, in some respects, the "successor" to the corporation which manufactured and marketed the allegedly defective product. In the present action, DeLapp asks this court to join the exodus from the traditional rules of successor corporate liability by sanctioning what is known as the "product-line" exception to these rules. This exception was created by the supreme court of California in *Ray v. Alad Corp.,* 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977). The *Ray* court summarized the product-line exception in the following manner:

> [A] party which acquires a manufacturing business and continues the output of its line of products ... assumes strict tort liability for defects in units of the same product line previously manufac-

tured and distributed by the entity from which the business was acquired.

*Id.* at 34, 136 Cal.Rptr. at 582, 560 P.2d at 11. The *Ray* court found this result consistent with the theory of strict liability in tort and justified by the following factors: (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business; (2) the successor's ability to assume the original manufacturer's risk-spreading role; and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business. *Id.* at 32–34, 136 Cal.Rptr. at 581–82, 560 P.2d at 9.

Our research discloses that the judicial reception to *Ray* has been somewhat less than enthusiastic. We find only three additional jurisdictions which have adopted the product-line exception as their law. *See Ramirez v. Amsted Indus., Inc.,* 86 N.J. 332, 431 A.2d 811 (1981); *Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106 (1981); *Martin v. Abbott Laboratories,* 102 Wash.2d 581, 689 P.2d 368 (1984). The clear majority of courts which have squarely addressed the issue have declined the invitation to adopt the exception. *See Bernard,* 409 So.2d at 1049–51; *Gonzales,* 117 Ill.App.3d at 440, 72 Ill.Dec. at 921, 453 N.E.2d at 796; *Jones v. Johnson Mach. & Press Co.,* 211 Neb. 724, 729–30, 320 N.W.2d 481, 484 (1982); *Downtowner, Inc. v. Acrometal Prods., Inc.,* 347 N.W.2d 118, 123–25 (N.D.1984); *Flaugher,* 30 Ohio St. at 65–67, 507 N.E.2d at 337; *Hamaker v. Kenwel–Jackson Mach., Inc.,* 387 N.W.2d 515, 520–21 (S.D.1986); *Ostrowski v. Hydra–Tool Corp.,* 144 Vt. 305, 307–08, 479 A.2d 126, 127 (1984); *Fish v. Amsted Indus., Inc.,* 126 Wis.2d 293, 303–11, 376 N.W.2d 820, 826–29 (1985); *Pelc v. Bendix Mach. Tool Co.,* 111 Mich.App. 343, 355–56, 314 N.W.2d 614, 620 (1981); *Young v. Fulton Iron Works Co.,* 709 S.W.2d 927, 940 (Mo.App.1986); *Griggs v. Capitol Mach. Works,* 690 S.W.2d 287, 291–94 (Tex. App.1985).

Those courts that have opted not to incorporate the product-line exception into their jurisprudence have generally been persuaded by one or more of three rationales: (1) the exception is inconsistent with elementary products liability principles, and strict liability principles in particular, in that it results in an imposition of liability without a corresponding duty, *e.g., Downtowner, Inc.,* 347 N.W.2d at 123; *Manh Hung Nguyen v. Johnson Mach. & Press Corp.,* 104 Ill.App.3d 1141, 1146–51, 60 Ill. Dec. 866, 870–72, 433 N.E.2d 1104, 1108–10 (1982); (2) the exception threatens small successor businesses with economic annihilation because of the difficulty involved in obtaining insurance for defects in a predecessor's product, *e.g., Bernard,* 409 So.2d at 1049–50; and (3) the exception is essentially a radical change in the principles of corporation law and, as such, should be left to legislative action, *e.g., Flaugher,* 30 Ohio St. at 66–67, 507 N.E.2d at 337. Although sometimes differing in their primary rationale for rejecting the product-line exception, these courts uniformly find the logic of *Ray* unpersuasive.

### III. *The Holding.*

This court, in *Hawkeye Security Ins. Co. v. Ford Motor Co.,* 174 N.W.2d 672, 683–84 (Iowa 1970), adopted the rule of strict liability in tort as set forth in section 402A of the Restatement (Second) of Torts. That section provides as follows:

> Special Liability of Seller of Product for Physical Harm to User or Consumer:
>
> (1) one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In adopting and explaining these principles, the court quoted the following from *Greenman v. Yuba Power Prods., Inc.*, 27 Cal. Rptr. 697, 701, 59 Cal.2d 57, 63, 377 P.2d 897, 901 (1963):

> The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by *the manufacturers that put such products on the market* rather than by the injured persons who are powerless to protect themselves.

(Emphasis added.) *Hawkeye Security Ins.*, 174 N.W.2d at 683. We continue to follow these principles. *See, e.g., Osborn v. Massey–Ferguson, Inc.*, 290 N.W.2d 893, 901 (Iowa 1980).

In order to establish a cause of action under this theory, our cases require a plaintiff to demonstrate, *inter alia*, that the defendant either manufactured the product, *id.*, or sold the product. *Kleve v. General Motors Corp.*, 210 N.W.2d 568, 570 (Iowa 1973). This requirement is consistent with traditional principles of tort law. For example, Comment A of section five of the above-noted Restatement defines the phrase "subject to liability," used in section 402A. That definition states "[t]he phrase thus deals with so much of the circumstances and events *preceding a plaintiff's injury* as are within the defendant's *exclusive ability to control.*" (Emphasis added.) The requirement is also consistent with the fact that strict liability, in this state, is still premised on the breach of a legal duty. *Thompson v. Stearns Chem. Corp.*, 345 N.W.2d 131, 134 (Iowa 1984). The Restatement (Second) of Torts, section four, defines the term "duty." Comment A to that section reads as follows:

> a. The duty which is defined in this Section is a duty that the actor shall conduct himself or not conduct himself in a particular manner. *It therefore imposes no obligation which is not within the actor's ability to perform, since it relates only to the actor's conduct over which as such he has control. . . .*

(Emphasis added.) Interfacing in the present case with these principles of tort law is a fundamental principle of corporation law: a corporation is a separate entity. *Wyatt v. Crimmins*, 277 N.W.2d 615, 616 (Iowa 1979). It is separate not only from its own officers, directors, and shareholders, *id.*, but also from any other corporation. As one court noted in dealing with the product-line issue:

> A corporation when formed takes on a legal identity in much the same way as a person is a legal entity. Any two corporations, like any two persons, are considered to be separate and distinct from each other. Each has its own assets and liabilities, and one cannot usually be responsible for the liabilities of another just as one person cannot be responsible for the liabilities of another. Also, it is the corporate entity that has liabilities and not the business that the entity does (a lawyer, and not his practice, is liable for his debts).

*Manh Hung Nguyen*, 104 Ill.App.3d at 1148, 60 Ill.Dec. at 872, 433 N.E.2d at 1110.

In the case at bar, there is no question but that Xtraman II is a corporation separate and independent from the corporation that manufactured and sold the allegedly defective hoist. To impose liability on Xtraman II under these facts would be inconsistent with the law of strict liability in tort as it has developed in this state. We agree with those courts which have held that such an outcome would amount to the imposition of liability without a corresponding antecedent duty. *See, e.g., Downtowner*, 347 N.W.2d at 123; *Manh Hung Nguyen*, 104 Ill.App.3d at 1146–51, 60 Ill.Dec. at 871, 433 N.E.2d at 1109. This is a result we refuse to sanction.

## IV. The Conclusion.

■ We believe the product-line theory is inconsistent and, as the law currently stands, theoretically irreconcilable with our law of strict liability in tort as well as with our law of corporate liability. We find the

logic of those courts which have rejected the doctrine more persuasive than the logic of those courts which have adopted it. Accordingly, we decline to adopt the doctrine as the law of this state. If the law is to be changed, the legislature is the appropriate forum for action. *See, e.g., Fish,* 126 Wis. 2d at 311, 376 N.W.2d at 828–29. Given this, the district court correctly determined that DeLapp's petition failed to state a cause of action. Summary judgment is appropriate. The district court is affirmed.

AFFIRMED.