CINCINNATI INSURANCE COMPANY, Plaintiff,

v.

Thomas J. EVANS, Ames Stationers, Inc., Defendants,

and

Permagrain Products, Inc., Appellant,

GoJo Industries, Inc., Appellee.

Eleanor H. POWER and Wilson H. Power; Marshall Scarlow, Trustee of the A.M. Scarlow Trust; Youth and Shelter Services, Inc.; and Cretex Corporation d/b/a Iowa Concrete Products, Plaintiffs,

v.

Thomas J. EVANS, Ames Stationers, Inc., Defendants,

and

Permagrain Products, Inc., Appellant,

GoJo Industries, Inc., Appellee.

No. 91–1796.

Supreme Court of Iowa.

Dec. 23, 1992.

 

Stephen D. Hardy, Daniel J. Hanson, and Ken A. Winjum of Grefe & Sidney, Des Moines, for appellant.

Stanley A. Roush of Warbasse & Roush, P.C., Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

LARSON, Justice.

Permagrain Products, Inc., manufacturer of a floor conditioner, appeals following a directed verdict for GoJo Industries, Inc., manufacturer of a hand soap, in an action for contribution following a fire, which, Permagrain claims, was caused in part by GoJo's soap. We reverse and remand.

Thomas J. Evans operated a store in Ames, Iowa, called Ames Stationers, Inc. In reconditioning the wood floor, Evans used Permagrain's floor conditioner, called C–1. This product contains forty-four percent linseed oil, twenty-two percent alkyd oil, and thirty-four percent mineral spirits. The mineral spirits thins the oil so that it is more easily absorbed by the wood. It evaporates, and the linseed and alkyd oils remain to cure the wood. When first applied, C–1 is highly flammable.

It is undisputed that, because of its linseed oil content, C–1 generates heat, which, if not disbursed, may cause spontaneous combustion. While this is not a problem when the product is applied to a floor, a mop, cloth, or other applicator that contains C–1 must be handled properly to avoid spontaneous combustion.

After Evans used the C–1, he attempted to clean the mop by wringing it out two or three times. He put several inches of water in a sink and added the GoJo soap. This soap contains some of the same flammable ingredients found in C–1. Evans testified that he washed the mop head in water and the GoJo soap for twenty or thirty minutes, squeezing the water and soap out of it from time to time. Evans finally decided the mop was as clean as it was going to be, although it still appeared

dark and had an oily feel to it. He hung the mop on a pipe near the sink and left. This was approximately 6:30 p.m.

A fire was reported at Ames Stationers at 9:53 p.m., and it burned intensely throughout the night, heavily damaging Evans' store and several adjoining buildings. An investigation of the fire revealed that it had started in the mop head, and this is not disputed by any of the parties.

Owners and operators of adjoining buildings sued Evans and Ames Stationers, alleging negligence in causing the fire. These plaintiffs later added Permagrain as a defendant, based on its allegedly inadequate instructions regarding the use of C–1. Evans and Ames Stationers filed a cross-claim against Permagrain for their own property damage and demanded contribution or indemnity for any amounts that the plaintiffs might recover from Evans and Ames Stationers.

Permagrain filed a third-party petition, Iowa R.Civ.P. 34, against GoJo for indemnity or contribution for the part that GoJo's soap had allegedly played in causing the fire. Through mediation, Permagrain settled all of the claims of the original plaintiffs and the claims of Evans and Ames Stationers. As a part of that settlement, Evans and Ames Stationers were released.

Permagrain also obtained releases of GoJo's liability so as to pursue Permagrain's claim for contribution or indemnity against GoJo. *See* Iowa Code §§ 668.5, 668.6 (1991). As a result of these settlement proceedings, the only parties remaining were Permagrain and GoJo, and the issue for trial was what share GoJo would be required to pay toward Permagrain's settlement of the claims.

At trial, all damages were stipulated. It was anticipated that the jury would determine the percentage of fault of Evans and Ames Stationers, as "released" parties under Iowa Code sections 668.3(2)(b) and 668.7, and the percentages of fault of Permagrain and GoJo. The trial court then was to apply the respective percentages of fault and determine Permagrain's right to contribution under Iowa Code section 668.5.

At the conclusion of Permagrain's evidence, GoJo moved for a directed verdict, urging that Permagrain had failed to establish the "common liability" prerequisite for contribution by establishing its own fault. *See Allied Mut. Ins. Co. v. State*, 473 N.W.2d 24, 26–27 (Iowa 1991). The court agreed and ruled that, while the evidence submitted would ordinarily be sufficient for a jury to find Permagrain liable, Permagrain had failed to "actually show" its own liability.

■ The issue on appeal is whether Permagrain's evidence, including the inferences drawn from it, was sufficient to defeat a motion for directed verdict. As previously noted, the trial court held that it was not sufficient because Permagrain must show that it was "actually" liable. For the reasons we discuss later, we believe this was error; a contribution plaintiff need only produce evidence on which a fact finder could reasonably base a finding of common liability.

Iowa Code section 668.5 provides in part:

1. A right of contribution exists between or among two or more persons *who are liable upon the same indivisible claim for the same injury, death, or harm*, whether or not judgment has been recovered against all or any of them. It may be enforced either in the original action or by a separate action brought for that purpose. The basis for contribution is each person's equitable share of the obligations, including the share of fault of a claimant, as determined in accordance with section 668.3.

2. Contribution is available to a person who enters into a settlement with the claimant only if the liability of the person against whom contribution is sought has been extinguished and only to the extent that the amount paid in settlement was reasonable.

(Emphasis added.)

Iowa Code section 668.6(2) provides:

If the percentages of fault of each of the parties to a claim for contribution have not been established by the court, contribution may be enforced in a separate action, whether or not a judgment has

been rendered against either the person seeking contribution or the person from whom contribution is sought.

■ In an appeal following a directed verdict, we view the evidence in the light most favorable to the resisting party, even in the face of contradictory evidence. Every legitimate inference that may be fairly and reasonably deducted therefrom must be carried to the aid of the evidence. *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 684 (Iowa 1990); Iowa R.App.P. 14(f)(2).

■ Despite enactment of the comprehensive fault provisions of Iowa Code chapter 668, our contribution law remains unchanged insofar as it requires a showing of common liability. As we said in a recent case,

> [w]e decline to eliminate or modify the common liability criterion for contribution claims. That requirement, originally prescribed as a rule of common law, has now attained statutory recognition. It is provided in Iowa Code section 668.5(1) (1989) that "[a] right of contribution exists between or among two or more persons who are liable upon the same indivisible claim for the same injury, death, or harm." It is not necessary, however, that the common liability rest on the same legal theory.

> It is not our role to alter this legislative determination of the grounds for a contribution claim. We declined to do so in *Rees v. Dallas County*, 372 N.W.2d 503, 505 (Iowa 1985), and *Speck v. Unit Handling Division of Litton Systems, Inc.*, 366 N.W.2d 543, 547–48 (Iowa 1985), both decided after the enactment of section 668.5(1). We maintain a similar posture in the present litigation.

*Allied Mut. Ins. Co.*, 473 N.W.2d at 26 (citations omitted).

Permagrain's fault, we believe, was sufficiently shown to avert a directed verdict. For example, it showed that (1) Permagrain knew that its product could spontaneously combust; (2) alkyd oil was less dangerous and could have been used; (3) the instructions did not specify what type of deter-gent or cleaning process should be used to remove the C–1.

There was substantial evidence in the record from which a jury could find Permagrain at fault. It is not clear what more could be required under the "actual liability" standard established by the court. Permagrain, of course, would not be permitted to introduce evidence of ultimate liability. *See Grismore v. Consolidated Prods. Co.*, 232 Iowa 328, 361, 5 N.W.2d 646, 663 (1942).

"Actual liability" is itself not a readily quantifiable concept, one that has not been defined by our contribution cases. We agree with Permagrain that producing evidence of its own fault was sufficient because a reasonable fact finder could conclude it amounted to "fault" under chapter 668.

■ In this case, GoJo asserts that in addition to the failure of Permagrain to establish common liability, it failed to produce sufficient evidence that any fault of GoJo was a proximate cause of the damage. On our review of the record, we disagree; the evidence was sufficient to generate a jury issue on proximate cause. We reverse and remand for retrial.

REVERSED AND REMANDED.