Gary C. PANCRATZ and Cindy L. Pancratz, Individually and as Parent and Friend of Cassandra L. Pancratz; Kathryn Pancratz; and Noah C. Pancratz, Plaintiffs,

v.

MONSANTO COMPANY; Knutson Construction Company; David Bear, Inc.; and Newport Manufacturing, Inc., Defendants.

MONSANTO COMPANY, Appellant,

v.

KNUTSON CONSTRUCTION COMPANY, Appellee,

and

David Bear, Inc.; and Newport Manufacturing, Inc., Defendants.

No. 94–1769.

Supreme Court of Iowa.

April 17, 1996.

Charles T. Traw of Leff, Haupert & Traw, Iowa City, for appellant.

Connie Alt and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This appeal involves the "mere continuation" exception to the general rule of nonliability for successor corporations. Appellant Monsanto Company, seeking indemnity from a corporation for injuries sustained when a worker on Monsanto's building fell from a defective ladder installed by the corporation's predecessor, urged an expansive application of the exception. The district court rejected Monsanto's argument and determined the successor corporation was entitled to judgment as a matter of law. Because we believe the directed verdict was not entered in error, we affirm.

## I. Procedural and Factual Background.

Plaintiffs Gary and Cindy Pancratz (hereinafter "Pancratz") sued Monsanto for personal injuries sustained by Gary when he fell from a ladder attached to an exterior wall of the Monsanto building where he was working. The fall was caused by separation of the ladder's hand rails at welds as he reached for the extended hand rails above the roof line. Pancratz also sued Knutson Construction Company, the corporate successor to the general contractor for the Monsanto building, and various subcontractors involved in fabricating and installing the ladder. Pancratz sued these defendants on theories of negligence, strict products liability, and breach of warranty.

Monsanto cross-claimed against Knutson Construction Company and the subcontractors for indemnification in the event Monsanto was found liable for any of Pancratz's damages. Knutson Construction Company repeatedly moved for summary judgment, arguing unsuccessfully that no basis existed for imposing liability against it as the successor to the corporation which actually constructed the building. The motions were denied and the case proceeded to trial. At the close of all the evidence, the district court granted Knutson Construction Company's motion for directed verdict, ruling the record contained no proof that any of the exceptions to the general rule of successor nonliability applied.

Monsanto challenged the directed verdict by way of motion for new trial. The court denied the motion. On appeal, Monsanto renews its challenge to the directed verdict, theorizing that the application of the "mere continuation" exception raises a factual question that should have been submitted to the jury.

To understand the parties' contentions, we must review the transaction between Knutson Construction Company and its predecessor. The facts are undisputed. The original Knutson Construction Company was a wholly owned subsidiary of Knutson Companies, Inc. (hereinafter "KCI"). The Knutson family owned all the stock of KCI, and Donald Knutson served as chairman of its board of directors. John Curry was president and chief executive officer of KCI for several years until he resigned in 1983 to work part-time as a consultant for the company. Bruce Knutson succeeded Curry as president and CEO. Curry never owned any stock in either Knutson Construction Company or KCI, nor is he in any way related to the Knutson family.

In 1985, KCI sought a buyer for Knutson Construction Company. After a prospective buyer backed out, Curry expressed his interest in acquiring the company's assets. Curry and his friend, James Michael (who had no prior association with the Knutson companies), formed Michael–Curry Companies, Inc. (hereinafter "MCCI"). MCCI in turn formed a wholly owned subsidiary, Michael–Curry Construction Company, for the purchase of Knutson Construction Company. Curry and Michael were the sole directors and shareholders of MCCI. No one from the Knutson family has ever owned stock in MCCI or participated in its management.

Upon Michael–Curry Construction Company's acquisition of Knutson Construction Company's assets, the transferring corporation changed its name to "Knut Co." Because Michael–Curry succeeded to the name of Knutson Construction Company, we shall hereinafter refer to the new (or successor) corporation as "Knutson," and the predecessor corporation as "Knut Co."

Knutson paid approximately $1.3 million for Knut Co.'s assets. The sale included prime construction contracts, a construction yard, and various equipment and supplies, as well as the company's name, logo, and good will. Certain other assets were specifically excluded; Knut Co. also retained some contracts. The parties agree that the transaction was intentionally structured as an asset purchase, rather than a stock purchase, to insulate Knutson from the debts and liabilities of Knut Co. *See* 15 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7122 (rev. perm. ed. 1990) (citing general rule that corporate asset transfer creates no liability in transferee for transferor's debts and liabilities).

Knutson hired most of Knut Co.'s employees. Curry served as president and CEO of Knutson from its creation until 1993, when he became chairman of its board of directors. Knutson had four vice presidents. One of them, Larry Trom, had worked for Knut Co. at the time of sale. No evidence was presented, however, that Trom held any management role at Knut Co.

For a few months after the sale, Knutson operated at the same location as Knut Co. had for many years. By the end of 1985, however, the business had moved and changed its registered address, stationery, and other records. Knut Co. continued to exist for a short time, but eventually declared bankruptcy.

## II. *Standard of Review.*

In reviewing an appeal from a directed verdict, "we view the evidence in the light most favorable to the resisting party, even in the face of contradictory evidence." *Cincinnati Ins. Co. v. Evans,* 493 N.W.2d 798, 801 (Iowa 1992); Iowa R.App.P. 14(f)(2). A motion for directed verdict should be denied where substantial evidence supports each element of the claim; but if the record contains no substantial evidence on one or more elements, a directed verdict is appropriate. *Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d 682, 684 (Iowa 1990).

## III. *Discussion.*

Monsanto contends substantial evidence in the record shows that Knutson was a mere continuation of Knut Co. It notes that the two corporations shared common assets, employees, business location, and trade name. They also provided the same services. Without contesting these factual findings, Knutson counters that the two corporations were at all times separate entities, sharing no common ownership or management. Thus the controversy on appeal centers on what factors are relevant to application of the "mere continuation" exception, and whether the district court appropriately decided the question as a matter of law.

As a general rule, a corporation that purchases the assets of another corporation assumes no liability for the transferring corporation's debts and liabilities. *DeLapp v. Xtraman, Inc.,* 417 N.W.2d 219, 220 (Iowa 1987). Exceptions arise only in four circumstances: (1) the buyer agrees to be held liable; (2) the two corporations consolidate or merge; (3) the buyer is a "mere continuation" of the seller; or (4) the transaction amounts to fraud. *Id.* Here Knutson argues that the general rule of nonliability

applies, while Monsanto contends the third, or "mere continuation," exception applies.

■ The mere continuation exception, as traditionally applied, focuses on continuation of the *corporate entity.* *Grand Lab., Inc. v. Midcon Lab.,* 32 F.3d 1277, 1283 (8th Cir. 1994) (applying Iowa law). The exception has no application without proof of continuity of management and ownership between the predecessor and successor corporations. Thus, " '[t]he key element of a "continuation" is a common identity of the officers, directors and stockholders in the selling and purchasing corporations.' " *Id.* (quoting *Leannais v. Cincinnati, Inc.,* 565 F.2d 437, 440 (7th Cir. 1977)); *see Weaver v. Nash Int'l, Inc.,* 730 F.2d 547, 548 (8th Cir.1984); *Tucker v. Paxson Mach. Co.,* 645 F.2d 620, 625–26 (8th Cir.1981).

It is generally recognized that the general rule of corporate successor nonliability developed "as a response to the need to protect bonafide purchasers from unassumed liability." *Tucker,* 645 F.2d at 623. To mitigate the potentially harsh results of the general rule, legal devices (such as corporate survival statutes) have developed to protect the rights of creditors after corporate dissolution. *Id.* at n. 7. Such methods, however, would not ordinarily protect the person injured by a defective product manufactured by a company whose assets have long since been sold. *Id.* at 623. Thus concern has arisen that the general rule may be inconsistent with the policies of strict liability. *Id.; see* 15 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7123.05. This concern has prompted a few courts to expand the basis for successor liability in products liability cases, either by creating new exceptions or broadening the old ones. Under the expanded approach to the mere continuation exception,

> the focus is on the continuity of the seller's *business operation* and not the continuity of its management and ownership. Thus, using a kind of "totality of the circumstances" approach, courts look at factors such as whether the successor corporation used the same employees, business location, assets, and trade name and produced the same products as the predecessor to

determine if there was a continuity of the predecessor's enterprise.

*Grand Lab.,* 32 F.3d at 1283 (citing *Cyr v. B. Offen & Co.,* 501 F.2d 1145, 1151–53 (1st Cir.1974) (emphasis added)); *Turner v. Bituminous Cas. Co.,* 397 Mich. 406, 428–30, 244 N.W.2d 873, 883–84 (1976).

■ Monsanto argues on appeal that Iowa decisions tend to follow the expanded or "totality of the circumstances" approach when considering successor liability. We, however, find no departure in our cases from the traditional formulation of the rule. Nor do we believe public policy would be served by such an expansion of the "mere continuation" exception.

In determining whether a successor corporation is liable under the mere continuation exception, this court has consistently looked for a continuity of management and ownership. *See Nelson v. Pampered Beef–Midwest, Inc.,* 298 N.W.2d 281, 288 (Iowa 1980) (holding mere continuation exception did not apply where "marked difference existed between the transferor and transferees"); *Arthur Elev. Co. v. Grove,* 236 N.W.2d 383, 392–93 (Iowa 1975) (mere continuation applied where partners who incorporated partnership remained in control). We have never applied the mere continuation exception where the buying and selling corporations had different owners. *See Grand Lab.,* 32 F.3d at 1284 n. 9.

Moreover, we made plain in *DeLapp* that we did not believe strict liability policies would be furthered by imposing liability on a successor corporation that was without fault in creating the defective product. 417 N.W.2d at 222; *see* 15 William M. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7123.06. Such a radical departure from traditional corporate principles, we observed, should be left to the legislature. *Cf. DeLapp,* 417 N.W.2d at 223 (rejecting "product line" exception to nonliability rule).

Monsanto nevertheless argues that this court's decision in *C. Mac Chambers Co. v. Iowa Tae Kwon Do Academy, Inc.,* 412 N.W.2d 593 (Iowa 1987), essentially focused on continuity of the business operation, not identity of ownership, in imposing liability on

a successor corporation. The case, however, is factually distinguishable. In *C. Mac Chambers*, a father owned and controlled the original corporation. *Id.* at 595. Facing insolvency, he formed a successor corporation whose sole director and shareholder was his son. *Id.* The son paid no consideration for his shares in the new corporation, and the father remained in charge. *Id.* at 597. The business continued in the same location, providing the same services to the same clientele. *Id.*

Although we held in *C. Mac Chambers* that the successor corporation was liable for the obligations of its predecessor despite the change in ownership, *id.*, we did not thereby reject the traditional approach to the "mere continuation" exception to nonliability. To the contrary, we relied on authority expressly adopting the traditional view. *See id.* (citing *Weaver v. Nash Int'l, Inc.*, 562 F.Supp. 860, 863 (S.D.Iowa 1983); *Tucker*, 645 F.2d at 623). But in retrospect the holding perhaps better exemplifies the fraud exception, not the mere continuation exception, to the general rule of nonliability. As recently observed by the Eighth Circuit Court of Appeals, the case "stands for the unremarkable proposition that parties cannot circumvent the mere continuation exception by inserting relatives as sham owners and directors of a new company that is in substance the predecessor." *Grand Lab.*, 32 F.3d at 1284.

As demonstrated by *C. Mac Chambers*, we need not expand the mere continuation exception in order to protect creditors and others from sham transfers. Thus we reject Monsanto's invitation to abandon the majority rule in favor of one adopted in a distinct minority of jurisdictions. *See* David B. Hunt, *Tort Law—Toward a Legislative Solution to the Successor Products Liability Dilemma—Niccum v. Hydra Tool Corp.*, 16 Wm. Mitchell L.Rev. 581, 585 n. 14 (1990) (noting eight courts have rejected expansion of the mere continuation doctrine while only one, Michigan, has adopted it).

Applying Iowa's longstanding rule to the record before us, we find beyond dispute that Knutson is not a mere continuation of Knut Co. Monsanto tendered no evidence of continuity of ownership. The two corporations shared no common stockholders. While it is true that Knutson's president and CEO, John Curry, had at one time served in a similar capacity with KCI, Curry resigned his management position with KCI two years before the sale. Thus the record contains no proof of identity in management. Other common factors urged by Monsanto (same employees, same location, same trade name) are irrelevant when evaluating the mere continuation exception under the traditional standard.

Furthermore, the evidence establishes that Knut Co. survived, at least for some time, after the sale. While it is true that Knutson continued Knut Co.'s general corporate activities, it carried out such operations as a distinct and separate corporate entity. *See Weaver*, 730 F.2d at 548. Unlike *C. Mac Chambers*, the record reveals no hint of a sham transfer. The substantial purchase price evidences an arm's-length transaction.

We are convinced the district court did not err in its refusal to submit the question of whether Knutson was a "mere continuation" of Knut Co. to the jury. The commonly accepted indicia point unmistakably to nonliability. Knutson was entitled to judgment as a matter of law. Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**